UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tidal Vision Products, Inc.,                                    Case No. 3:25-cv-1707

        Plaintiff,

    v.                                                         MEMORANDUM OPINION
                                                                AND ORDER

Mark T. Dodd,

        Defendant.

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Tidal Vision Products, Inc. seeks a preliminary injunction prohibiting Defendant Mark Dodd, its former Vice President "of Pacific Gro/Director of Agronomy," from disclosing and misappropriating its "property, property information, and trade secrets."  (Doc. No. 2 at 8).  Dodd was employed by Tidal Vision from October 3, 2022, until November 15, 2024, when the parties ended Dodd's employment relationship and entered into an independent contractor agreement.  (*Id.* at 3; Doc. No. 1-3 at 2-9).

Tidal Vision alleges Dodd "repeatedly exploited the confidential information he obtained during his employment to contact many of Tidal Vision's current and prospective customers, employees, vendors, and investors . . . [and] is urging these parties to cease doing business with Tidal Vision and soliciting them for his rival business."  (Doc. No. 1 at 6).  It further alleges "Dodd has directly marketed his knowledge of Tidal Vision's confidential information and trade secrets to at least two companies, including O2YS Corporation and Organisan Corporation," that he "has

directly solicited Tidal Vision's national and international customers, and [that] he has assisted Tidal Vision's competitors in their efforts to target and sell to Tidal Vision's customers." (*Id.* at 7).

On August 15, 2025, I granted Tidal Vision's motion for a temporary restraining order, noting Dodd did not object to the entry of that order but reserved the right to challenge Tidal Vision's claims throughout the duration of this litigation. (Doc. No. 5). On August 22, 2025, I extended the term of that temporary restraining order with the consent of the parties. (Doc. No. 8). I held a preliminary injunction hearing on September 3, 2025. Dodd testified during that hearing, as did Norman Davy, the President and Chief Commercial Officer of Tidal Grow AgriScience, a division of Tidal Vision.

## II. DISCUSSION

The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits or some other reasoned resolution of the dispute takes place. *See, e.g.*, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996). Given this limited purpose, it is customarily granted based on procedures less formal and evidence less complete than one would find in the record of a trial on the merits. *Camenisch*, 451 U.S. at 395.

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Tidal Vision argues it "is likely to succeed on the merits of both its federal Defend Trade Secrets Act claim and its Ohio Uniform Trade Secrets Act claim." (Doc. No. 2). These claims have similar required elements. The federal claim requires the plaintiff to "show the existence of a

2

protectable trade secret and misappropriation of the trade secret." *Presidio, Inc. v. People Driven Tech., Inc.*, 686 F. Supp. 3d 652, 683 (S.D. Ohio) (citation omitted). Ohio law prohibits the "[a]ctual or threatened misappropriation" of trade secrets. Ohio Rev. Code § 1333.62(A).

Section 1839 of Title 18 of the United States Code defines the term "misappropriation" to include, in relevant part, the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or hard reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II). The Ohio Uniform Trade Secrets Act uses essentially identical language. *See* Ohio Rev. Code § 1333.61(B).

> The Defend Trade Secrets Act defines a trade secret as:
>
> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--
>
> > (A) the owner thereof has taken reasonable measures to keep such information secret; and
> >
> > (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Whether information may be designated as a trade secret is a question of fact. *See, e.g., AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 979 (6th Cir. 2021).

Ohio law again utilizes a substantially similar definition. *See* Ohio Rev. Code § 1333.61(D). In addition, "[t]he Supreme Court of Ohio has articulated six factors to consider in determining whether an item constitutes a trade secret:

> (1) the extent to which the information is known outside the business;

3

(2) the extent to which it is known to those inside the business, i.e., by the employees;

(3) the precautions taken by the holder of the trade secret to guard the secrecy of the information;

(4) the savings effected and the value to the holder in having the information as against competitors;

(5) the amount of effort or money expended in obtaining and developing the information; and

(6) the amount of time and expense it would take for others to acquire and duplicate the information."

*Handel's Enter., Inc. v. Schulenburg*, 765 F. App'x 117, 122 (6th Cir. 2019) (citations omitted).

Davy testified that he had reviewed emails between Dodd and Mark Nichols, the Vice President of Sales at O2YS, in which information was shared about Tidal Vision's products and pricing structure.[1]  O2YS produces similar products as Tidal Vision, which Davy testified were competitive with Tidal Vision's products.  According to Davy, Dodd had access to Tidal Vision's customer lists, pricing information, and other detailed nuances about a customer's business and business needs.  And Davy testified he had conversations with customers who said Dodd was sharing price lists and customer information.

I conclude, for purposes of its motion for a preliminary injunction, that Tidal Vision has established it is likely to succeed on the merits of its trade secrets claims.[2]

---

[1]  These emails were not produced to Dodd prior to or during the preliminary injunction hearing, as they currently are subject to a protective order in civil litigation in the United States District Court for the Western District of Missouri.

[2]  A significant portion of the preliminary injunction hearing involved testimony about Dodd's alleged violation of the non-solicitation provision of his independent contractor agreement.  (*See* Doc. No. 1-3 at 5).  But Tidal Vision did not seek a preliminary injunction with respect to its contractual claims and, therefore, I will not consider that testimony except so far as it is relevant to Tidal Vision's trade secrets claims.

A customer list "is presumptively a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner." *State ex rel. Lucas Cnty. Bd. of Comm'rs v. Ohio Env't Prot. Agency*, 724 N.E.2d 411, 418 (Ohio 2000) (citing cases). But a customer list is not protected as a trade secret if "the identify of the customers is readily ascertainable through ordinary business channels or through classified business or trade directories." *Id.* (citations and quotation marks omitted). A party bringing a trade secrets claim "must take some active steps to maintain" the secrecy of the asserted trade secret "in order to enjoy presumptive trade secret status." *Handel's*, 765 F. App'x at 122.

Tidal Vision presented sufficient evidence to establish it had taken reasonable measures to prevent the disclosure of its customer lists to outside parties.[3] Dodd agreed in his separation and independent contractor agreements that customers lists were "Confidential Information and that he would "treat all Confidential Information as strictly confidential." (Doc. No. 1-2 at 7-8); (*see also* Doc. No. 1-3 at 3-4). He further agreed that he would not directly or indirectly disclose Confidential Information to anyone other Tidal Vision employees who had a "need" and "authority" to know that information. (Doc. No. 1-2 at 8). (*See also* Doc. No. 1-3 at 4) (agreeing to use Confidential Information "solely to perform services for the benefit of" Tidal Vision). Moreover, there was no evidence presented during the preliminary injunction hearing indicating that Tidal Vision's customer lists were readily ascertainable.

While Dodd testified he has not marketed any of Tidal Vision's trade secrets or confidential information to any of Tidal Vision's competitors, he was not asked about, nor did he volunteer,

---

[3] Tidal Vision also argues Dodd was sharing confidential information in the form of its pricing lists. But neither the separation agreement nor the independent contractor agreement includes "price lists" within the definition of Confidential Information. And there was no testimony or other evidence presented to establish what measures Tidal Vision takes to protect its price lists from public view. Therefore, Tidal Vision has not established the required element it has taken reasonable measures to protect the secrecy of its price lists. *See* 18 U.S.C. § 1839(3) and *Handel's*, 765 F. App'x at 122.

whether he had spoken with any customers about Tidal Vision's customer lists. That leaves only Davy's sworn testimony that he spoke with customers who reported Dodd had shared customer information with them. At this stage of the proceedings, the record evidence establishes Tidal Vision is likely to succeed on the merits of its trade secrets claims.

Second, I conclude Tidal Vision also has established it will suffer irreparable harm if a preliminary injunction is not issued. Courts "generally presume[]" a plaintiff will suffer irreparable harm from the misappropriation of trade secrets because the damages caused by that misappropriation "will be difficult to measure in monetary terms." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013) (citing cases). That presumption holds true at this stage of the litigation, as it would be difficult to calculate the monetary damages Tidal Vision may suffer from the misappropriation of its protected customer lists.

Finally, prohibiting Dodd from further misappropriation of confidential customer lists will not cause harm to him or to another party and will further serve the public interest.

### III. CONCLUSION

While Plaintiff Tidal Vision Products, Inc. sought a preliminary injunction prohibiting Defendant Mark Dodd from disclosing and misappropriating its "property, property information, and trade secrets," (Doc. No. 2 at 8), I conclude Tidal Vision has established only a likelihood of success on its claim that Dodd has misappropriated its confidential customer lists. Therefore, and for the reasons stated above, I grant Plaintiff Tidal Vision Products, Inc.'s motion for a preliminary injunction on that limited scope. It hereby is ordered Defendant Mark T. Dodd is restrained and enjoined from disclosing or otherwise misappropriating Tidal Vision's confidential customer lists.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

6